UNITED STATES DISTRICT COURT
DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| ANDREW J. IRWIN,<br><br>        Plaintiff,<br><br>v.<br><br> CAROLYN W. COLVIN, Acting<br>Commissioner of Social Security,<br><br>        Defendant. | **MEMORANDUM DECISION AND ORDER**<br><br>Case No. 2:15-CV-00786-DBP<br><br>Magistrate Judge Dustin B. Pead |

The parties stipulated to this Court's jurisdiction pursuant to 28 U.S.C. 636(c).  (ECF No. 15).  Plaintiff, Andrew J. Irwin, ("Mr. Irwin") appeals the Commissioner of Social Security's decision denying his  claim for Disability Insurance Benefits under Title II of the Social Security Act (the Act), 42 U.S.C.§§401–433, as well as, Supplemental Security Income,  42 U.S.C. §§1381–1383f. (ECF No. 3).  Having considered the parties' briefs, the administrative record, the arguments of counsel, and the relevant law, the Court REVERSES and REMANDS the Commissioner's decision for further consideration.

## BACKGROUND

Mr. Irwin filed an application for Disability Insurance Benefits ("DIB"), as well as, Supplemental Security Income ("SSI") on June 24, 2013, alleging disability beginning September 10, 2012. (Tr. 196–197).  Mr. Irwin's claim was initially denied on September 30, 2013, and upon reconsideration on February 13, 2014. (Tr. 85, 86, 87, 88).  Thereafter, Mr. Irwin timely requested a hearing before an Administrative Law Judge ("ALJ") on February 19, 2014. (Tr. 137–138).

A hearing was held on March 20, 2015 before Administrative Law Judge Norman Bennett. (Tr. 37–58).  The ALJ issued a decision finding Mr. Irwin not disabled on June 9, 2015. (Tr. 139–165).  The Appeal Council denied Mr. Irwin's request for review on September 25, 2015.  (Tr. 1–5).  Mr. Irwin brought this action to appeal the Commissioner's decision pursuant to 24 U.S.C. § 405(g), which provides for judicial review of the defendant's final decision.

### A.  Factual History

Mr. Irwin is disabled due to physical and mental impairments.  Mr. Irwin alleged chronic pain due to osteoarthritis in his back, hands, and feet.  (Tr. 398).  Mr. Irwin initially saw Dr. Ryan Hanson, M.D., who found his pain was "most likely arthritis."  (Tr. 398).   Mr. Irwin first met with Adan Pearson, PA-C, in 2013. Mr. Pearson who diagnosed Mr. Irwin with generalized osteoarthritis, bipolar disorder, and COPD.  (Tr. 429–430).  In March 2014 Mr. Pearson wrote a letter explaining that Mr. Irwin had COPD, generalized arthritis, and bipolar disorder.  (Tr. 436). He noted pain was greatest in the left shoulder and that these conditions limited Mr. Irwin's ability to work and perform activities of daily living.  (Tr. 436).

In April 2014 an MRI showed that Mr. Irwin had a SLAP (superior labrum, anterior to posterior) tear of the left shoulder.  (Tr. 440).   Records from 2015 show that Mr. Irwin had no insurance and was having difficulty affording treatment. (Tr. 452).  Shauna McBride, MMS, PA-C, recommended Mr. Irwin apply to Medicaid to have his SLAP tear repaired.  (Tr. 482). An exercise tolerance test showed possible myocardial ischemia. (Tr. 460). In May 2015 he was diagnosed with leukocytosis, a disorder characterized by a high white blood cell count. (Tr. 496, 499). Also in May 2015 Mr. Irwin began seeing Dr. William Esplin, who noted positive straight leg raise tests, bilaterally, and observable osteoarthritic changes in the hands.  (Tr. 498).

2

With regard to his mental impairments, Mr. Irwin was hospitalized for seven days in April 2009 struggling with suicidal ideation.  (Tr. 279).  He was prescribed medication and therapy.  (Tr. 279).   His diagnosis was bipolar disorder and depression.  (Tr. 287, 297).  Mr. Irwin reported that many of the medications did not help.  (Tr. 309, 311, 312).  Mr. Irwin was again seen for suicidal ideation in January 2010.  (Tr. 351).  He complained of anxiety.  (Tr. 361).   In September 2011 Mr. Irwin reported that his medications were making him sleepy all the time and he had to stop taking them as he needed to get back to work.  (Tr. 373).

In August 2013 Mr. Irwin underwent a consultative psychological exam with Dr. Ryan Houston.  (Tr. 420). Dr. Houston diagnosed bipolar disorder and anxiety disorder.  (Tr. 426). He stated that Mr. Irwin has memory issues likely related to stress. *Id*.  He noted he had not found any medication that seemed to work. *Id.* Dr. Houston stated Mr. Irwin's impairments would interfere with his ability to interact with his co-workers and noted his symptoms might become more severe in a work environment.  *Id*.

In March 2015 Mr. Pearson filled out a residual functional capacity assessment.  He noted that Mr. Irwin's medications cause fatigue and dizziness.  (Tr. 454).  He opined that Mr. Irwin's pain would constantly interfere with his ability to maintain attention and concentration. (Tr. 454).  His stress would frequently interfere with his ability to maintain concentration and attention.  (Tr. 454).  He opined that Mr. Irwin could walk no more than a city block without pain, would have problems with stooping, crouching, and bending.  (Tr. 455). He opined that Mr. Irwin would need to lie down or recline throughout the workday due to fatigue and pain.  (Tr. 455).  He stated Mr. Irwin would need to lie down about two hours of an eight hour workday. (Tr. 455).  He stated that Mr. Irwin could sit for about thirty minutes before he would need to

3

change positions, stand for about thirty minutes before he needed to change positions and walk for about twenty minutes.  (Tr. 455).  Dr. Pearson also noted that Mr. Irwin would be limited in his abilities to use his upper extremities.  (Tr. 456).  Finally he opined Mr. Irwin would be off task more than 30% of the workday and miss five or more days of work per month.  (Tr. 457).

**B.  Hearing Testimony**

At the hearing, Mr. Irwin testified he was fifty years old.  (Tr.40). He is five-foot-seven-inches tall and weighs 190 pounds.   (Tr. 40).  He completed his GED, but has no other schooling.  (Tr. 41).  The last time he worked was January 2012 in a training program at Deseret Industries.  (Tr. 41).  It was not full time work.  (Tr. 41).  Prior to that he worked at Family Dollar Store but had to stop as he was unable to lift the pallets.  (Tr. 42–43).

Mr. Irwin testified that he started having shortness of breath in 2011.  (Tr. 45).   He testified that any physical activity makes it difficult for him to breathe.  (Tr. 46).  He can walk about a block before he is out of breath.  (Tr. 46). Some chemical smells aggravate this condition.  (Tr. 47).  He uses an inhaler.  (Tr. 47).

Mr. Irwin testified he has arthritis in his hands, back, and feet.  His fingers are starting to twist and it is difficult for him to carry things or open a car door.  (Tr. 48).  He stated that medications do not help much.  (Tr. 48).   He does not lift more than a gallon of milk on a regular basis.  (Tr. 49).  The only insurance he has is PCN. (Tr. 49).   Mr. Irwin has to change positions all the time to try to alleviate his pain.  He will walk around the house or work on chores for about ten minutes before he has to sit down and rest.  (Tr. 50).  Walking hurts due to the arthritis in his feet.  (Tr. 51).

Mr. Irwin's testified he has had suicidal ideation and crying spells brought on by depression. (Tr. 53). He takes medication for his depression and was in therapy. He did not find therapy helpful. (Tr. 53–54).

### C.  ALJ Decision

In his decision, the ALJ found that Mr. Irwin had the severe impairments of chronic obstructive pulmonary disease, SLAP tear of the left shoulder, and depressive disorder. (Tr. 23). At step 3 he found that Mr. Irwin did not meet a listing. (Tr. 24). The ALJ found that Mr. Irwin could perform light work, limited to simple repetitive tasks and no exposure to excessive amounts of dust, fumes, gases, chemicals, or poor ventilation. (Tr. 25).

With this RFC, the ALJ found that Mr. Irwin could not perform his past relevant work. (Tr. 29). However, he found there was other work available that Mr. Irwin can perform. (Tr. 30). Therefore, the ALJ found Mr. Irwin was not disabled. (Tr. 31).

### D.  Post-Decision Evidence

After the decision was issued, but prior to the Appeals Council decision in this case, Mr. Irwin submitted evidence of a cataract in his right eye. (Tr. 6). He submitted x-rays of his hands, dated only two weeks after the ALJ decision, which suggest arthropathic changes. (Tr. 16). An x-ray of his lumbar spine suggested spondylosis. (Tr. 17). These records were sent to the Appeals Council and are part of the record in front of this Court.

## STANDARD OF REVIEW

The Court's review of the Commissioner's decision is limited to determining whether her findings are supported by "substantial evidence and whether the correct legal standards were applied. *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007). "Substantial evidence is such

relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id*. (quotation omitted). The Court may neither reweigh the evidence, nor substitute its judgment for the Commissioner's. *Id*.

In its review, the Court should evaluate the record as a whole, including that evidence before the ALJ that detracts from the weight of the ALJ's decision. *Shepherd v. Apfel*, 184 F.3d 1196, 1199 (10th Cir. 1999). However, the reviewing Court should not re-weigh the evidence or substitute its own judgment for that of the ALJ. *Qualls v. Apfel,* 206 F.3d 1368, 1372 (10th Cir. 2000). Further, the Court "may not 'displace the agenc[y]'s choice between two fairly conflicting views, even though the Court would justifiably have made a different choice had the matter been before it de novo.'" *Lax* at 1084. Lastly,"[t]he failure to apply the correct legal standard[s] or to provide this Court with a sufficient basis to determine that appropriate legal principles have been followed [are] grounds for reversal." *Jensen v. Barnhart*, 436 F.3d 1163, 1165 (10th Cir. 2005).

## <u>ANALYSIS</u>

Plaintiff raises three issues on appeal: 1) Whether the ALJ erred in his evaluation of the severity of Mr. Irwin's arthritis; 2) Whether the ALJ erred in his evaluation Adon Pearson's opinion; and 3) Whether the ALJ erred by failing to include all Mr. Irwin's impairments in his residual functional capacity assessment. For reasons set forth below, the Court finds that the ALJ erred in his evaluation of Mr. Irwin's arthritis by not evaluating the records of Dr. Esplin. This failure results in a lack of substantial evidence to support the ALJ's findings regarding the severity of Mr. Irwin's arthritis and his findings regarding the opinion of Adon Pearson, PA-C, and Mr. Irwin's credibility.

6

On appeal, Mr. Irwin argued that the ALJ's failure to consider evidence that was submitted post-hearing resulted in a failure to properly evaluate Mr. Irwin's osteoarthritis.  At step 2 of the sequential evaluation, the ALJ found that Mr. Irwin's arthritis was not a severe impairment because "[p]hysical examinations have been largely unremarkable. No deformities have been noted in the hands or other joint. There was no tenderness to palpitation to the back." (Tr. 23).  The ALJ also found: "Any diagnosis of osteoarthrosis, osteoarthritis or arthritis was made by Adon Pearson, PA-C, who is not a medically[-]acceptable source." (Tr. 23.) However, these findings are not factually correct.  In May 2015 Mr. Irwin submitted records to the ALJ before he issued his decision.  These records were from Dr. William Esplin, D.O and Dr. Joseph Te, M.D.  (Tr. 461–462; 496–499).  Dr. Esplin noted Mr. Irwin had chronic osteoarthritis in his hands, feet, and lower back.  (Tr. 496–97). Dr. Esplin also noted that Mr. Irwin had "osteoarthritic changes in his hands." (Tr. 498.)  Dr. Esplin is an acceptable medical source and diagnosed arthritis.  Therefore, the ALJ's finding that no acceptable medical source diagnosed arthritis is factually incorrect.

Furthermore, these records contain evidence that contradicts the ALJ's findings as to the severity of Mr. Irwin's arthritis.  Dr. Esplin noted that Mr. Irwin had positive straight leg testing bilaterally, as well as, osteoarthritic changes in his hands.  (Tr. 498).  Dr. Te noted spinal tenderness to percussion. (Tr. 462).   None of this evidence was addressed by the ALJ.  The ALJ cannot pick and choose from the record using only the evidence that supports his theory, he must look to all the evidence of record.  *Hardman v. Barnhart*, 362 F.3d 676, 681 (10th Cir. 2004).

The Commissioner acknowledges that this evidence was not addressed but argues that the failure to discuss this evidence is harmless error.  The Court cannot agree.  At best, the ALJ's

findings as to Mr. Irwin's osteoarthritis are incomplete; at worst, they are inaccurate. Thus, those findings are not supported by substantial evidence.  Therefore, this case will be remanded to allow the ALJ to perform an analysis of Mr. Irwin's osteoarthritis that includes the evidence from Drs. Esplin and Te.

Furthermore, the Court finds that the ALJ's failure to properly evaluate the evidence regarding Mr. Irwin's osteoarthritis also may have impacted his findings as to the opinions of Mr. Adon Pearson, PA-C.  While the ALJ is correct that Mr. Pearson is not an acceptable medical source, his opinions as to Mr. Irwin's functional limitations must still be considered. Social Security rulings and regulations are clear that "in addition to evidence from the acceptable medical sources" evidence from other sources should be used to "show the severity of your impairment(s) and how it affects your ability to work." 20 C.F.R. § 404.1513(d).  This includes evidence from physician's assistants. 20 C.F.R. § 404.1513(d)(1).  Mr. Pearson's suggested limitations were based largely on Mr. Irwin's osteoarthritis and pain complaints.  (Tr. 454–457). The Court cannot find to its satisfaction that the ALJ properly rejected Mr. Pearson's suggested limitations based on the ALJ's findings regarding Mr. Irwin's arthritis.  Instead, the Court is left to guess whether the ALJ might have considered Mr. Pearson's opinions in a different light when combined with Drs. Esplin's and Te's records.  Therefore, on remand, the ALJ must re-evaluate his findings as to the opinions of Mr. Pearson in light of the evidence from Drs. Esplin and Te.

Finally, this Court finds that the ALJ's incomplete arthritis evaluation may have improperly informed the ALJ's finding that Mr. Irwin is not credible.  (Tr. 26).  The ALJ states that his credibility finding is based, at least in part, on his finding that Mr. Irwin's "alleged" back pain and arthritis are medically indeterminable and/or non-severe.  (Tr. 26).   As this Court has

found error with the ALJ's evaluation of Mr. Irwin's osteoarthritis, the ALJ's reliance on those findings in determining Mr. Irwin's credibility requires that, on remand, the ALJ re-evaluate Mr. Irwin's credibility to reflect the findings of Drs. Esplin and Te.

The Court does not express any opinion as to whether Mr. Irwin is or is not disabled. That is a decision left to the Commissioner as the finder of fact.

## CONCLUSION AND ORDER

For the reasons set forth above, the Court REVERSES and REMANDS this case to the Commissioner.  On remand, the Commissioner must specifically consider the evidence from Drs. Esplin and Te and how it impacts the ALJ's findings as to the severity of Mr. Irwin's osteoarthritis and the limitations stemming therefrom. The Commissioner will further determine if the evaluation of Mr. Pearson's opinions regarding Mr. Irwin's functional limitations is appropriate in the context of the findings from Drs. Esplin and Te.  Finally, the ALJ will re-evaluate whether this evidence impacts his findings regarding Mr. Irwin's credibility.  The Court expresses no opinion about whether the ALJ's findings at any step of the evaluation process will change. Nonetheless, on remand the ALJ should address the aforementioned errors and thoroughly re-evaluate the evidence as instructed above.

The Clerk of Court is instructed to close this case.

DATED this 2nd day of December 2016.     By the Court:

_____
Dustin B. Pead
United States Magistrate Judge

9